SUSAN A. STONE, *Appellant,* v. NORMAN L. STONE, *Respondent.**

*Gibbon & Thoreson,* by *Donald L. Thoreson,* for appellant.

*Kenneth D. VanDerhoef* and *Hohlbein, Church, Sawyer & VanDerhoef,* for respondent.

McGOVERN, J.—The July 4, 1965, marriage of Susan and Norman Stone was dissolved by decree of divorce entered December 6, 1967. Appealing from that order, Mrs. Stone challenges the court's conclusion that a child born to her on December 6, 1966, is not the legitimate offspring of that marriage.

Connubial bliss was of short duration for the Stones—in fact, it lasted less than 1 year. Almost immediately they started quarreling; they argued about their in-laws and they bickered about her schooling; he physically abused her, frightened her with a gun and struck her on the head with a duffel bag. She carried on an illicit relationship with another young man.

It was the testimony of Mrs. Stone that her promiscuous conduct terminated in February, 1966, before her period of gestation began. She said that her child could not have

*Reported in 458 P.2d 183.

been the result of the meretricious union because her usual monthly physical change commenced March 2, subsequent to the conclusion of that union. She testified that Mr. Stone is the natural father of her full-term baby conceived March 16 when he visited her at the apartment, and born December 6, 1966.

Mr. Stone, however, testified that he lived with his wife only until March 2, 1966, at which time he was arrested and charged in the municipal court of the city of Seattle with the crime of disorderly conduct. As a result of that charge, he claimed that the military authorities immediately confined him to the United States Coast Guard ship to which he was attached and that he remained confined to that ship until March 25 when his restriction was lifted. He testified that he left the ship during that period of time on only three occasions: once when he had to be in court; later when he had to appear at his attorney's office; and on the third occurrence when he and his attorney went to his apartment to retrieve his personal clothing. He further said that on each of those occasions he was at all times accompanied by an officer from the ship. He said he did not have marital relations with Mrs. Stone during either February or March, 1966.

From that paucity of evidence the trial court found that Mr. Stone did not have access to his wife during the critical period of time and therefore concluded that Mrs. Stone's young daughter is not the product of a legal relationship. It thus irrevocably tagged the child with the label of illegitimacy and with all of the serious disabilities that attend such status. We reverse because the evidence was not sufficient to support that conclusion.

■ We are firmly committed to the rule that a child born during wedlock is presumed to be legitimate. *Pierson v. Pierson,* 124 Wash. 319, 214 P. 159 (1923); *State ex rel. Bentley v. Frenger,* 158 Wash. 683, 291 P. 1089 (1930); *In re a Minor,* 29 Wn.2d 759, 189 P.2d 458 (1948); *Carfa v. Albright,* 39 Wn.2d 697, 237 P.2d 795, 31 A.L.R. 2d 983 (1951). Equity, justice and common sense require that every reasonable presumption be made in favor of legitimacy and we

place a heavy burden of proof on the person alleging illegitimacy. 10 Am. Jur. 2d *Bastards* § 10 (1963). The learned Justice Cardozo has said that the presumption of legitimacy should not fail unless common sense and reason are outraged by such a holding. H. Clark, *Law of Domestic Relations* 172 (1968).

While various standards have been set up concerning the degree of proof necessary to overcome the presumption of legitimacy of a child born to a married woman, we favor the view taken by most courts in this country, *i.e.*, a mere preponderance of the evidence is not sufficient to rebut that presumption. Something more is required before it can be said that the challenger has sufficiently met his burden of proof, and that "something more" should be evidence so strong and irresistible that no other conclusion can reasonably be made. We said in *Pierson,* that "A court will not by its judgment brand an innocent child with the bar sinister unless the record is so far conclusive as to leave room for no other course." The evidence in the instant case does not measure up to that degree of certainty.

In addition to the testimony of Mrs. Stone that her husband visited her on March 16 and again on March 17 and that the child was conceived on that earlier date, Mr. Stone admitted living with his wife from about March 28 until early June 1966 when he and Mrs. Stone separated for the final time. He also admitted having marital relations with her during the month of April. In brief then, Mr. Stone said that he lived apart from his wife for a period of only 22 days, and on that testimony the court concluded that the child of Mrs. Stone is illegitimate, despite the fact that serological blood tests were agreed to and the results failed to disprove Mr. Stone's paternity.

Although the trial court entered into its deliberation with much concern and with the correct view in mind that a child born during wedlock is the legitimate product of that marriage, yet the record indicates that it based its finding of nonaccess on a mere preponderance of the evidence. It thus misapplied the law. After all evidence was in but

before the findings were entered, the judge said that "Just as it stands, this is just about a fifty-fifty deal. I don't want to make a mistake if I can help it," and "At the moment I am stumped. The burden is on the man. So let me think this over."

Under that view of the evidence it was legally incumbent upon the court to enter findings of fact consistent with the conclusion of legitimacy. Since it failed to do so, we reverse. The strong presumption of legitimacy was not sufficiently rebutted.

HUNTER, C. J., FINLEY and HAMILTON, JJ., and COLE, J. Pro Tem., concur.

---

October 21, 1969. Petition for rehearing denied.