[No. 5703-8-III.   Division Three.   January 10, 1985.]

*In the Matter of the Marriage of* MARILYN R. HARDT,
*Respondent, and* FRED F. HARDT, *Respondent,*
THE STATE OF WASHINGTON, *Appellant.*

494

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Ronald S. Zirkle, Deputy,* for appellant.

*Paul D. Edmondson,* for respondent Fred Hardt.

McINTURFF, J.—Fred Hardt brought this action to vacate a decree dissolving his former marriage to Marilyn Hardt contending there were irregularities in the decree. The Superior Court granted Mr. Hardt's motion to vacate because the dissolution decree awarded relief in excess of the petition request. The State of Washington, as intervenor, appeals this modification alleging that decree may not be vacated 5 years following its entry, that the Superior Court inappropriately admitted blood test results, and that the State need not reimburse Mr. Hardt for his past support payments nunc pro tunc. We affirm.

Mr. and Mrs. Hardt were married May 29, 1973. On

November 24, 1973, Mrs. Hardt delivered Freddie Hardt, Jr., after a full–term pregnancy. She subsequently prepared a do–it–yourself dissolution petition in which Mr. Hardt joined. That petition alleged Freddie was a child of the marriage. Although the petition expressly omitted a child support provision, the court nevertheless entered the October 8, 1975 dissolution decree, ordering Mr. Hardt to pay $50 per month in child support.[1]

Mr. Hardt was unaware of the support requirement until 2 months following entry of the decree, when the Washington State Support Enforcement Office apprised him of it. He denied any support obligation, but the office said the decree created one. Mr. Hardt, with only a fifth grade education, apparently took this comment at face value and paid the Department of Social and Health Services a total of $912.08 in child support.

■ First, the State contends the court improperly vacated the 5–year–old dissolution decree. CR 60(b) allows this court to

> relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . .
>
> (11) Any other reason justifying relief from the operation of the judgment.

Courts may vacate judgments involving irregularities even where an order is unappealable for error of law. Trautman, *Vacation and Correction of Judgments in Washington,* 35 Wash. L. Rev. 505, 515 (1960); *Morsbach v. Thurston Cy.,* 148 Wash. 87, 91, 268 P. 135 (1928); *In re Estate of Johnston,* 107 Wash. 25, 33–34, 181 P. 209 (1919); *State v. Keller,* 32 Wn. App. 135, 140, 647 P.2d 35 (1982) (CR 60 allows relief in extraordinary circumstances).

---

[1]The petition read, in pertinent part:

"The Petitioner seeks the court's ratification of arrangements for . . . support of the children . . . as may be agreed upon by the parties. Petitioner proposes such arrangements as follows:

". . .

"(b) The [*sic*] FRED F. HARDT SR. should pay support for the dependent children as follows: NONE."

Mr. Hardt contends two irregularities justify his motion to vacate: that the decree was void since it provided more relief than the petition requested, and that Mrs. Hardt fraudulently entered the child support amount in the do–it–yourself decree. Proceedings to vacate judgments are equitable in nature and the court should exercise its authority liberally "to preserve substantial rights and do justice between the parties." *Haller v. Wallis,* 89 Wn.2d 539, 543, 573 P.2d 1302 (1978); *accord, Pamelin Indus., Inc. v. Sheen–U.S.A., Inc.,* 95 Wn.2d 398, 404, 622 P.2d 1270 (1981). The superior court's decision to vacate should be disturbed only upon a showing of clear or manifest abuse. *Kennedy v. Sundown Speed Marine, Inc.,* 97 Wn.2d 544, 548, 647 P.2d 30, *cert. denied,* 459 U.S. 1037 (1982); *State v. Scott,* 92 Wn.2d 209, 212, 595 P.2d 549 (1979); *Haller,* at 543.

■■ With respect to Mr. Hardt's first alleged irregularity, void judgments have long been recognized as that type of irregularity justifying a motion to vacate. *See generally* Trautman, at 514. Void judgments may be vacated irrespective of the lapse of time. *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 370, 83 P.2d 221, 118 A.L.R. 1484 (1938); *accord,* Restatement (Second) of Judgments § 74, comment *a,* at 203 (1982). The next consideration, then, is whether this dissolution decree was void because it provided greater relief than the petition requested. In *Haller,* the court held a judgment by consent may not be set aside if it conforms to the stipulation unless obtained by fraud or mutual mistake. *Haller,* at 544 (quoting 3 E. Tuttle, *Judgments* § 1352, at 2776–77 (5th rev. ed. 1925)). Here, the court found the judgment did not conform to the parties' stipulation. Hence, it correctly vacated the judgment.[2]

---

[2]The State contends consent decrees preclude subsequent challenges citing *In re Marriage of Wherley,* 34 Wn. App. 344, 661 P.2d 155 (1983). But in *Wherley,* the couple received "exactly what [they] prayed for in [the] petition." *Wherley,* at 347–48. In contrast, Mr. Hardt signed a petition expressly eliminating child support, yet later found his wages garnisheed to fulfill a support obligation.

■■ Second, the State contends the Superior Court erred by admitting several of Mr. Hardt's exhibits pertaining to the blood test results because the safeguards usually used to assure the identities of blood samples were not taken.[3] The admissibility of blood test results depends upon verified identification of the mother, child and alleged father. S. Schatkin, *Disputed Paternity Proceedings* § 9.03 (4th rev. ed. 1975). Since the State stipulated to the tests' validity, the remaining issue, then, is whether the court properly held as a factual matter that the blood samples' identities were verified.

Here, Mr. Hardt testified that the samples were taken from Freddie, Mrs. Hardt and himself. Next, Walter Dutcher, who had significant experience taking blood samples for the State, signed a paternity information form indicating he witnessed the drawing and airport delivery of the blood samples. Finally, the numbers on the shipping document sent by Mr. Dutcher and Mr. Edmondson matched

---

We need not consider Mr. Hardt's second alleged irregularity as the court entered no findings of fact or conclusions of law on this issue. *Howe v. Washington Land Yacht Harbor, Inc.*, 77 Wn.2d 73, 88, 459 P.2d 798 (1969).

[3]Exhibits 1 and 2 are medical lab clinic release and waiver forms signed by both Fred and Marilyn Hardt. Exhibit 4 is a Cascade Airways Uniform Air bill for shipping blood samples. Exhibit 7 is a letter from Margaret Books, general supervisor from the Baltimore Blood Testing Lab, to attorney Paul Edmondson, acknowledging receipt of $150 payment for "the enclosed Hardt paternity affidavits." Exhibit 15 regards a letter from Ben Dawson, M.D., from the Baltimore Blood Testing Lab, to Mr. Edmondson providing analysis showing nonpaternity.

The State also contends the court erred in admitting hearsay blood test results. It is true that in the absence of statute or special circumstance, generally a report from an independent third party as to test results constitutes inadmissible hearsay where the author of the report did not testify and was not subject to cross examination. Annot., *Admissibility, as Against Hearsay Objection, of Report of Tests or Experiments Carried Out by Independent Third Party*, 19 A.L.R.3d 1008, 1011 (1968 & Supp. 1983). But evidence "relating to paternity may include . . . blood test results, weighted in accordance with evidence . . ." Former RCW 26.26.110. In addition, the State stipulated to the scientific accuracy of these tests conducted by Dr. Ben Dawson, a nationally recognized expert often appointed by Washington courts to perform them. *See, e.g., State v. Meacham*, 93 Wn.2d 735, 737, 612 P.2d 795 (1980).

those in the Baltimore Lab official's deposition. Thus, we find substantial evidence supports the court's decision finding the blood samples adequately identified. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Third, the State contends insufficient evidence supported the court's finding of nonpaternity. Mr. Hardt has the burden of rebutting a presumption of paternity for three reasons: (1) Mrs. Hardt delivered Freddie during the marriage; (2) Mr. Hardt acknowledged his paternity in the dissolution petition; and (3) the court ordered him to pay child support of which he paid a portion. RCW 26.26.040.

■ But this presumption may be rebutted upon a showing of clear, cogent and convincing evidence. RCW 26.26-.040. The amount of evidence necessary to overcome this presumption is evidence "so strong and irresistible that no other conclusion can reasonably be made." *Stone v. Stone,* 76 Wn.2d 586, 588, 458 P.2d 183 (1969); *Ripplinger v. Ripplinger,* 9 Wn. App. 166, 167, 511 P.2d 82 (1973). Whether this presumption has been rebutted is a factual question. *Richards v. Richards,* 5 Wn. App. 609, 613, 489 P.2d 928 (1971).

Here the blood tests indicated conclusively Mr. Hardt was not the father. Next, disputed testimony by Mr. Hardt indicates he did not have intercourse with Mrs. Hardt prior to marriage. Moreover, Mrs. Hardt's testimony regarding the occurrence of intercourse conflicted with her answers to interrogatories. We find substantial evidence supports the finding of nonpaternity.

■ Finally, the State contends the court erred by ordering reimbursement through its nunc pro tunc decree because these decrees are limited to remedying clerical errors.[4] Although the court may enter a decree nunc pro

---

[4]The State also alleges RCW 26.09.170 prohibits Mr. Hardt from obtaining reimbursement for his past child support payments. That section reads, in pertinent part: "The provisions of any [support] decree . . . may be modified only as to installments accruing subsequent to the motion for modification . . ." But this statute assumes one has a support obligation. Because we find the dissolution

tunc to make the record reflect "what actually happened", it may not enter this decree "to make [the record] speak what it did not speak but ought to have spoken." *In re Marriage of Pratt,* 99 Wn.2d 905, 911, 665 P.2d 400 (1983) (quoting *State v. Ryan,* 146 Wash. 114, 117, 261 P. 775 (1927)). Here, we find the court improperly entered the nunc pro tunc decree in its attempt to make the record reflect what should have happened rather than what actually did.

The strong weight of authority suggests, however, the State should be compelled to return to Mr. Hardt the moneys paid pursuant to the void decree. The United States Supreme Court has stated the rule that "[w]hat has been given or paid under the compulsion of a judgment the court will restore when its judgment has been set aside and justice requires restitution." *United States v. Morgan,* 307 U.S. 183, 197, 83 L. Ed. 1211, 59 S. Ct. 795 (1939). Section 74 of Restatement of Restitution (1937) provides in part at pages 302–03:

> A person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is . . . set aside, unless restitution would be inequitable . . .

*See In re Anacortes,* 81 Wn.2d 166, 170, 500 P.2d 546 (1972). This principle has been generally followed by other courts. *See, e.g., Monckton v. Linkbelt Corp.,* 505 F. Supp. 96, 97 (D. Del. 1981); *Alexander Hamilton Life Ins. Co. of Am. v. Lewis,* 550 S.W.2d 558, 559 (Ky. 1977); *Murdock v. Blake,* 26 Utah 2d 22, 484 P.2d 164, 168 (1971); *Levy v. Drew,* 4 Cal. 2d 456, 50 P.2d 435, 436 (1936). Because we find this decree void, Mr. Hardt should be reimbursed for payments made pursuant to it.

Mr. Hardt requests attorney's fees, pursuant to RAP 18.1, contending the State's appeal was frivolous. We do not find this appeal frivolous, but award Mr. Hardt his requested amount of $546.45 pursuant to RCW 26.26.140.

---

decree void, Mr. Hardt has no obligation to pay; therefore this statute does not control.

The judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.