IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN THE MATTER OF THOMAS J. WINTER, a vulnerable adult: | ) ) ) | No. 76465-9-I (Consolidated with No. 79860-0-I, 78060-3-I; Linked with No. 79860-0-I) |
| MORRIS A. WINTER, | ) ) | |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, on behalf of THOMAS J. WINTER, | ) ) ) ) ) | |
| Respondent. | ) ) | |

HAZELRIGG, J. — In 2015, the Department of Social and Health Services sought and obtained a Vulnerable Adult Protection Order (VAPO) on behalf of Thomas J. Winter against his brother, Morris A. Winter. Morris[1] did not seek review of this order. Morris now seeks review of multiple orders denying motions to vacate the VAPO on various grounds. Because the court did not abuse its discretion or misinterpret the Abuse of Vulnerable Adults Act[2] in denying the motions to vacate, we affirm. However, we vacate the order awarding attorney fees to Thomas because RCW 74.34.130 does not provide a legal basis for the award to a party who was not the petitioner in the VAPO action.

---

[1] For clarity, Thomas Winter and Morris Winter will be referred to by their first names. No disrespect is intended.
[2] Chapter 74.34 RCW.

Morris also seeks modification of the clerk's ruling dismissing a linked appeal for failure to file his opening brief timely. Because the clerk had a valid basis to dismiss and Morris has not shown that the ends of justice demand reinstatement of the appeal, the motion to modify is denied.

FACTS

2015 Issuance of Vulnerable Adult Protection Order

In 2015, the Department of Social and Health Services (DSHS) filed a petition for a Vulnerable Adult Protection Order (VAPO) on behalf of Thomas Winter. DSHS sought a VAPO against Thomas' brother, Morris Winter, alleging that Morris had threatened Thomas' dog, Becky, and refused to return the dog to Thomas, which caused Thomas additional stress and anxiety and exacerbated his physical symptoms.

Thomas is over 60 years old and has advanced Parkinson's disease. He resides in a skilled nursing facility because he is not able to manage his own care. The petition was supported by the declaration of the Community Nurse Consultant for Adult Protective Services (APS), who reviewed Thomas' medical records during an investigation of a report alleging that Morris was taking funds from Thomas through undue influence. She found multiple instances in which Thomas told his medical providers that Morris had threatened Becky. She asserted Thomas had found a foster home for Becky where he would be able to visit her but Morris refused to turn over the dog. Attached to the petition was a consent to receipt of protective services, which indicated that Thomas consented to assistance with a protection order.

On June 25, 2015, the court entered a VAPO restraining Morris from "committing or threatening to commit acts of abandonment, abuse, neglect, or financial exploitation against the vulnerable adult" for five years. The order included a finding that "Respondent committed acts of abandonment, abuse, neglect and/or financial exploitation of the vulnerable adult." The order also required Morris to turn over Becky to the APS nurse or the investigating Bellevue Police detective immediately. It did not include any restraints on contact between the brothers. Morris surrendered Becky to APS the day after the VAPO was entered. He did not file a motion for reconsideration or an appeal of this order.

2016 CR 60(b) Motion to Vacate

On June 24, 2016, Morris moved to vacate the VAPO under CR 60(b). He argued that the portion of the order requiring him to surrender the dog had been satisfied and that Thomas had recanted his prior allegations of abuse. Thomas filed a response through his independent counsel opposing the motion to vacate. DSHS also opposed the motion.

A commissioner of the superior court denied the motion in part and granted it in part. The court entered findings of fact that Thomas did not recant, but had subsequently re-confirmed, his statements regarding Morris' threats to his dog and that he continued to be a vulnerable adult in need of protection from Morris. The court concluded that Morris did not have standing to bring a motion under chapter 74.34 RCW and had not shown fraud, mistake, or misconduct justifying relief under CR 60.

Morris filed a motion for reconsideration under CR 59, which was denied. He also moved for revision of the commissioner's order under RCW 2.24.050. The superior court denied the motion for revision after a hearing in January 2017. On "de novo review of the record, on the merits[,]" the court denied the motion to vacate under CR 60. In its oral ruling, the court made clear that it did not believe Thomas had recanted the allegations of mental abuse and "[i]f anything, I have Thomas reiterating that Morris was threatening towards his dog in a way that alarmed Thomas."

In considering the equities, the court noted that "the return of the dog is only a part of the problem" and that "the consequences that Morris has suffered directly from, apparently because of the customs issue," were not so inequitable as to prevent the order from having prospective application. The court stated that it was not inequitable for the protection order "to have the intended effect" after a "fully litigated hearing before a commissioner where there were disputed allegations of mental abuse." Regarding CR 60(b)(11), the court found that there was "nothing in this record that indicates that there was some critical piece of factual information that the commissioner was missing" when the VAPO was entered. In its written order, the court also noted that it viewed the motion as untimely and that Morris did not have standing under RCW 74.34.163 to bring a motion to vacate.

Through his independent counsel, Thomas moved for an award of attorney fees and costs incurred in responding to the motions to vacate, for reconsideration, and for revision. The court granted the motion, concluding that Thomas was the

prevailing party and the award constituted necessary relief for his protection under RCW 74.34.130. DSHS was not involved in the attorney fee request or award.

Morris filed a notice of appeal seeking review of the January 2017 denial of the motion for revision. He filed a second notice of appeal seeking review of the order awarding attorney fees and costs to Thomas. The appeals of these two orders were consolidated for review by this court.

2017 Settlement Agreement in King County Superior Court No. 15-2-22589-8 SEA

Before any briefing had been submitted, Morris and Thomas filed a joint motion to stay the appeal in this court to facilitate ongoing settlement negotiations. In a notation ruling, the clerk of this court granted the stay. The parties were involved in negotiations to settle a separate case that Thomas had brought against Morris and his wife, Cheryl. DSHS was not involved in that case. The superior court appointed a litigation guardian ad litem (LGAL) in that case with the authority "to make decisions related to the procedure of the litigation so long as not involving a waiver of a substantial right of Thomas." The court found that:

> [Thomas] can sometimes be capable of generally expressing his interests and guiding his attorney of record as to representation, but is in need of protection and assistance during times of incapacity and inability to express his interests, particularly when there is a dosage change in the medication provided to him as treatment for his Parkinson's disease.

In July 2017, Thomas entered into a CR 2A agreement with Morris and Cheryl to settle the lawsuit. The agreement contained the following provision concerning the VAPO:

> Tom agrees to cooperate fully with efforts to fully vacate the VAPO order and finding (Case No. 15-2-14162-7) and have the APS finding

(Docket No. 03-2016-LIC-00149) dismissed with a goal of clearing Morris' name. Tom and his attorneys agree to immediately instruct Talmadge law firm to withdraw their NOA and not participate on Tom's behalf. The brothers agree to notify Jennifer Boharski and DSHS APS that there is a settlement in the civil matter and that the brothers have reconciled, including all issues surrounding the dog Becky. The brothers further agree to request that DSHS APS vacate the VAPO finding and order and APS finding.

In the LGAL's summary report, he stated that he reviewed the CR 2A with Thomas and believed Thomas understood all of its terms. The LGAL asserted that he was familiar with the case and believed the settlement was reasonable, appropriate, and in Thomas' best interest "so he could stop the expense of the litigation in terms of both money and time, and possibly health, and get on with his life." He also stated that he did not believe any of the participants in the mediation would have continued with negotiations if there was any concern about Thomas' ability to participate in the process.

On October 22, 2017, Thomas amended the consent to receipt of protective services that he had signed in 2015, stating:

> I[,] Thomas J. Winter[,] hereby revoke all authorization and consent for APS or its agents to provide services related to the matters involving Morris Winter and myself . . . . I further request APS and its agents to support vacating the protection order (VAPO) and its findings that APS sought against Morris Winter on my behalf and dismiss all findings under any and all APS investigations regarding Morris Winter and myself because APS and other misinterpreted records and statements which led to VAPO findings and APS investigation findings that are inaccurate.

Thomas and his independent counsel both signed the statement.

2017 Agreed Application to Vacate

On November 8, 2017, Morris and Thomas filed an "agreed application under RCW 74.34.163" to vacate the VAPO in superior court. At the time he filed the application, Thomas had not been adjudicated incapacitated under chapter 11.88 RCW. Thomas submitted a declaration stating that he no longer wished for the VAPO to remain in place. Morris and Thomas argued that keeping the order in place against Thomas' wishes would restrict his liberty and autonomy interests. They also argued that DSHS lacked statutory authority to oppose the application.

DSHS opposed the application. It argued that its response was permitted because it was a party to the action as the initial petitioner on Thomas' behalf and because it had "ongoing concern for him." It argued that the VAPO should remain in place because Thomas remained a vulnerable adult in need of protection, as evidenced by a July 2017 psychological evaluation conducted by Dr. Janice Edwards and filed in the separate case between Thomas and Morris. Dr. Edwards concluded that Thomas was subject to influence, particularly from Morris, and did act under undue influence by Morris. DSHS also argued that Morris did not have authority to bring a motion to vacate under RCW 74.34.163 and that the VAPO did not impose any restriction on the brothers' relationship.

Morris filed a reply and a declaration of Dr. Bennett Blum, who stated his opinion that Thomas was vulnerable to being unduly influenced but that Morris did not unduly influence him. Dr. Blum also listed several methodological problems with Dr. Edwards' report and opined that there was no evidence to conclude that Thomas lacked capacity to enter into the settlement agreement. He asserted that

leaving an unwanted protection order in place could harm the relationship between the brothers and could cause psychological harm to Thomas.

At the hearing on the application to vacate the VAPO, DSHS requested that the reply be stricken because Thomas had not joined in the reply and Morris did not have statutory authority to bring the motion himself. The commissioner heard from Thomas, who made references to some financial difficulties and Morris' management of his assets. When the commissioner asked for clarification, Thomas' independent counsel made the following statement to the court:

> I'm in a difficult ethical situation. And at the time that he signed the CR 2-A, his guardian ad litem in that action, Craig Coombs[,] and I believed that he had the capacity to make that decision.
> Since that time[,] without revealing attorney-client confidences, I've had some difficulty in being convinced that my client understands what he signed and what's going forward. He did sign the CR 2-A, and at the time that he signed it, I believed that he had the capacity to do so. Since that time[,] I'm not convinced that[,] as his attorney and on his behalf, I can actually state what his wishes actually are. And so I don't deny signing the CR 2-A on his behalf. I don't deny that he really, really would love to have a real relationship with his brother. I understand Morris Winter's position that as long as the VAPO is in place, that's not likely.
> I did not see Dr. Blum's report until Monday morning, and I did not have the opportunity to review the pleadings in the report with my client, and that's why I did not sign the reply.
> Even as you can tell from this morning, I'm just not sure that my client is in a position to give me the authority to sign anything on his behalf at this point in time.
> The guardian ad litem in the litigation was not appointed in this matter and he has taken the position that it exceeds the scope of his authority to take a position in this matter. So it's—I'm very sorry to present this case to you in this status, Your Honor.

The superior court commissioner denied the application to vacate. The commissioner noted in his oral ruling:

> I found it disappointing when Thomas Winter addressed the Court that his focus was on the events surrounding the writing of a

check, the management of the assets from his perspective, and where that's left him. I didn't hear from him an application this morning to vacate this order.

As such, I'm going to deny the relief requested. And I'm going to point out that even arguendo that Thomas signed these pleadings earlier, it's not clear to me that he has the capacity to make that decision in this case today. And it's not clear to me that he wants that in this case today.

Morris moved to revise the commissioner's order denying the application. Thomas did not join in the motion for revision in writing or at the hearing on the motion. When the superior court asked at the hearing whether Thomas was joining in the motion, his counsel stated, "I feel like I do not have a client who is able to give me direction." The court asked, "I know you did not at the time, but do you now have concerns about Thomas's capacity at the time of the CR 2-A?" Thomas' counsel responded in the affirmative. She indicated that she was receiving inconsistent directions from Thomas:

> My problem, with a client who has very diminished capacity and fluctuating capacity, is that . . . where my directives from my client have been mutually exclusive—so, for example, in the appellate pleadings I gave the example of, you know, it's okay if I say I want to lose weight and I eat a cookie while I'm saying it. But to have a client telling me "I want you to help me lose weight, and I want you to get me some cookies," that's where I am.

The court denied the motion for revision for four "independent reasons, which each stand on their own:"

1. Thomas Winter is not present asking the court to revise[,]
2. Thomas Winter does not appear to be able to adhere to the CR 2A[,]
3. The court has significant concerns regarding Thomas Winter's capacity to enter the CR 2A, his declaration and now[,]
4. The failure of the parties to include the State in the negotiations.

The court articulated some of its reservations in its oral ruling:

I would settle for Tom Morris [sic] telling us clearly now, which is not many moons after the CR 2-A agreement, that he wants it, the underlying order, vacated. I mean, he got that question directly, and he was unable to say that. He was repeating his worries about his assets to the commissioner. Nor has he joined in this revision. And his attorney is letting me know clearly she doesn't have the ability to rely on his direction. It's not even clear that he's giving her any direction here. She's not joining in this revision, so that's what I have here is a record that really doesn't satisfy me that he has decided that he wants this order vacated. I have indications he did, but that's about as much as I've got.

Morris appealed the denial of the motion for revision. The appeal was consolidated with the stayed proceedings in this court and a new briefing schedule was set. Morris' appellate counsel withdrew before the opening brief was submitted.

2018 Motion to Vacate

Meanwhile, in superior court, Thomas filed another motion to vacate the VAPO under RCW 74.34.163 through his special settlement administrator. Morris joined in support of Thomas' motion. On March 8, 2019, the trial court denied Thomas' motion to vacate the VAPO. Morris filed another notice of appeal. This court declined to consolidate the new appeal with the pending appeal, but linked the two cases for disposition.

The clerk of this court granted two extensions of time for filing the opening brief and indicated in the second extension that "if the opening brief is not filed by 11-27-19, the appeal will be dismissed without further notice." On November 27, 2019, Morris filed a motion to extend time for filing his opening brief until December 2, 2019 because, although his brief was "substantially complete," "a computer software malfunction has just been discovered that is corrupting elements of the

opening brief electronic file." On December 2, 2019, Morris' former appellate counsel informed the clerk's office that he had heard from Cheryl that Morris was hospitalized for a medical emergency. Former counsel stated that he had a copy of the incomplete opening brief and could transmit it to the court at the court's direction. The clerk of the court dismissed the linked appeal because "the conditions of the 10-18-19 ruling have not been met." Morris filed a motion to modify the clerk's ruling dismissing the appeal. The clerk of this court referred the motion to this panel of judges for consideration.

ANALYSIS

I.    2016 CR 60(b) Motion to Vacate

Morris contends that the trial court erred in declining to revise the ruling denying his motion to vacate, finding his motion untimely, and finding that he lacked standing under RCW 74.34.163. He also argues that the court erred in awarding attorney fees under RCW 74.34.163 to Thomas for his independent counsel's response to this motion.

A.  CR 60(b)

A commissioner's actions are subject to revision by a superior court judge. RCW 2.24.050. A party may move for revision of a commissioner's order within ten days. Id. If no motion is filed within ten days, the commissioner's ruling becomes the order of the superior court. Id. On revision, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues presented to the commissioner. Id.; Faciszewski v. Brown,

- 11 -

187 Wn.2d 308, 313 n.2, 386 P.3d 711 (2016).  After the superior court has decided the motion for revision, any appeal is from the superior court's decision, not the commissioner's. Faciszewski, 187 Wn.2d at 313 n.2.

A trial court's decision on a CR 60(b) motion to vacate a judgment or order is within the court's discretion. Martin v. Pickering, 85 Wn.2d 241, 245, 533 P.2d 380.  "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971) (superseded by statute on other grounds by, Seattle Times Co v. Benton County, 661 P.2d 964, 99 Wn.2d 251 (1983)).  The superior court's factual findings are reviewed for substantial evidence. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).  Substantial evidence is that which is "sufficient to persuade a rational fair-minded person the premise is true." Id.

The court may grant relief from a final judgment, order, or proceeding for a number of reasons, including:

> (4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> . . .
> (6) The judgment has been satisfied, released, or discharged, . . . or it is no longer equitable that the judgment should have prospective application;
> . . .
> (11) Any other reason justifying relief from the operation of the judgment.

CR 60(b).  A CR 60(b) motion is not a substitute for appeal and does not allow a litigant to challenge the underlying judgment. Bjurstrom v. Campbell, 27 Wn. App.

449, 451, 618 P.2d 533 (1980). "[A]n unappealed final judgment cannot be restored to an appellate track by means of moving to vacate and appealing the denial of the motion." State v. Gaut, 111 Wn. App. 875, 881, 46 P.3d 832 (2002).

### 1. CR 60(b)(4)

A party seeking to vacate a judgment under CR 60(b)(4) must establish by clear and convincing evidence that the fraudulent conduct or misrepresentation caused the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense. Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). Clear and convincing evidence is that which shows the ultimate fact in issue to be highly probable. Douglas Nw., Inc. v. Bill O'Brien & Sons Const., Inc., 64 Wn. App. 661, 678, 828 P.2d 565 (1992). "The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989).

Morris highlighted multiple instances in medical records submitted to the court in which medical providers noted Thomas' paranoia, confusion, and admissions that he fabricates information. He also argued that Thomas' accusations had spawned two separate APS investigations and two criminal investigations, but stated that all the allegations had been found to be almost entirely unsubstantiated.

Morris also submitted an excerpt of Thomas' deposition testimony taken in connection with the separate civil case between the brothers that, he argued, showed Thomas recanting his story about the dog. During the deposition, Thomas

was asked whether Morris had ever said anything about Becky that he considered threatening and Thomas said, "Yes." When asked to elaborate, Thomas responded:

> Morris said, ["]If you do anything to stop the litigation,["] or something like that, and I took that to mean Becky would be harmed if I didn't stop. That was the brunt of the conversation . . . . I took it—he looked at Becky, and Becky was in a sweater in the hot weather, and she was supposed to get a break to go pee, and Brian had to remind my brother as we were leaving to let Becky go pee.

Thomas said that Morris told him he would do whatever he needed to do to protect himself, just like Thomas would. When asked if Morris had made any other comments that Thomas considered a threat to Becky, he responded, "Not directly." Counsel asked if there were any other indirect threats, and Thomas responded that he had not had much interaction with Morris since that time. Thomas also reiterated some of his concerns about Becky's health when she was living with Morris.

Considering the evidence as a whole, substantial evidence supported the superior court's conclusion that Thomas had not recanted his prior allegations of mental abuse. Thomas did not directly contradict any of his previous statements and confirmed that he considered Morris' words about Becky to have been threatening. Morris did not show that it was highly probable that the VAPO had been obtained through fraud, and the court did not abuse its discretion in denying relief based on CR 60(b)(4).

2. CR 60(b)(6)

Morris argues that the order was partially satisfied when he returned the dog and that it would be inequitable for the restraint portion of the VAPO to remain in effect.

A proceeding to vacate a judgment is equitable in nature "and the relief sought or afforded is to be administered in accordance with equitable principles and terms." White v. Holm, 73 Wn.2d 348, 351, 438 P.2d 581 (1968).[3] In deciding these motions, the court should exercise its discretion to ensure that the substantial rights of the parties are preserved and "justice between the parties be fairly and judiciously done." Id.

Although the commissioner ruled that Morris had satisfied paragraph 10 of the VAPO and granted the motion for relief in part under CR 60(b)(6), the superior court did not indicate that any portion of the motion for relief was granted on the written denial of revision. In its oral ruling, the court noted that "the return of the dog is only part of the problem." The court did not make an explicit ruling as to whether paragraph 10 of the VAPO was satisfied, but stated that "[t]he fact the dog went back then doesn't mean the dog shouldn't stay out of Morris' custody, and be in Thomas' control for the period ordered in the initial order." The court implied that an order stating that paragraph 10 had been satisfied "is likely to lead to further alarm and upset for Thomas who's still clearly and deeply attached to his dog and upset about her."

---

[3] Although the Washington Supreme Court made this statement in reference to a motion to vacate a default judgment, Division Three of this court has applied this principle in the context of a CR 60(b) motion to vacate a judgment that was not obtained by default. See In re Marriage of Hardt, 39 Wn. App. 493, 496, 693 P.2d 1386 (1985).

The superior court declined to vacate paragraph 10 of the order even though Morris had surrendered the dog in accordance with the VAPO. Substantial evidence supported the court's finding that Thomas remained attached to his dog and upset about his perception of the treatment she received from Morris. Morris did not identify any adverse effect that this particular portion of the order, standing alone, had caused. The court did not abuse its discretion in declining to vacate paragraph 10 of the order when the balance of the equities did not weigh in favor of vacation.

Morris also argues that the VAPO should have been vacated under CR 60(b)(6) because it was no longer equitable that the restraint against abuse should have prospective effect. The catch-all portion of CR 60(b)(6) "was designed to deal with problems arising under a judgment that has continuing effect, where a change in circumstances after the judgment makes it inequitable to enforce the judgment." Metro. Park Dist. of Tacoma v. Griffith, 106 Wn.2d 425, 438, 723 P.2d 1093 (1986).

Morris argued below that it would be inequitable for the order to remain in place because APS had issued a decision finding Morris guilty of mental abuse of a vulnerable adult based on the VAPO and that decision could lead to collateral reputational and professional consequences. Morris stated that he was appealing the APS decision. He also asserted that he was subject to long delays when attempting to reenter the United States at the Canadian border and was told he would continue to experience problems crossing the border while the VAPO was in effect. He argued that these consequences made enforcement of the order

inequitable, relying again on the argument that Thomas had recanted his prior allegations of mental abuse.

As noted above, substantial evidence supported the superior court's finding that Thomas had not recanted the allegations that gave rise to the VAPO. The court weighed the consequences of the VAPO that Morris was experiencing against the prior court's unchallenged finding that Morris had committed acts of abuse against Thomas and found that it was not inequitable for the order to remain in effect. The court did not abuse its discretion in making this determination.

### 3. CR 60(b)(11)

Finally, Morris contended he was entitled to relief under the catch-all section of CR 60(b), which allows the court to vacate an order for "[a]ny other reason justifying relief." CR 60(b)(11). Although the language of the rule is broad, this provision is "reserved for situations involving extraordinary circumstances not covered by any other section of CR 60(b)." In re Marriage of Furrow, 115 Wn. App. 661, 673, 63 P.3d 821 (2003). Such circumstances "must relate to 'irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings.'" Id. at 674 (quoting In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985)).

> [A]n irregularity is regarded as a more fundamental wrong, a more substantial deviation from procedure than an error of law. An irregularity is deemed to be of such character as to justify the special remedies provided by vacation proceedings, whereas errors of law are deemed to be adequately protected against by the availability of the appellate process.

Id. at 674 (quoting Philip A. Trautman, Vacation and Correction of Judgments in Washington, 35 Wash. L. Rev. 505, 515 (1960)).  Division Two of this court has stated that this provision "supports vacation of a default order and judgment that is based upon incomplete, incorrect or conclusory factual information." Caouette v. Martinez, 71 Wn. App. 69, 78, 856 P.2d 725 (1993).

Morris based his argument under this subsection primarily on the same grounds as his previous arguments: asserting that Thomas had recanted his allegations and emphasizing the collateral consequences of the VAPO to Morris. The superior court did not find any indication that the commissioner was missing any key factual information at the time the VAPO was entered and found that the circumstances resulting from the entry of the VAPO were foreseeable and not extraordinary.  Again, the court did not err in finding that Thomas did not recant and that the consequences to Morris did not justify vacation of the order.  Morris did not claim any other extraordinary circumstances justifying relief.  Based on the record before it, the superior court did not abuse its discretion in denying the motion to vacate the VAPO under CR 60(b).

B.  Alternative Grounds

Morris argues that the court's notes that it viewed the motion as untimely and that he did not have standing to bring a motion to vacate the VAPO under RCW 74.34.163 require reversal.  The court denied the CR 60(b) motion on the merits.  It did not deny the motion based on untimeliness or lack of statutory standing.  Morris fails to explain why any error in deciding these issues requires reversal when the court considered and denied the motion on the merits, nor does

he provide any citation to authority in support of these arguments. Passing treatment of an issue, lack of reasoned argument, or conclusory arguments without citation to authority are not sufficient to merit judicial consideration. West v. Thurston Cty., 168 Wn. App. 162, 187, 275 P.3d 1200 (2012). We decline to consider these issues.[4]

C. Attorney Fee Award Under RCW 74.34.130

Morris argues that Thomas was not entitled to an award of attorney fees under RCW 74.34.130 because he was not the petitioner in the VAPO action. Morris also argues that the amount of fees imposed was unreasonable. DSHS acknowledges that it did not participate in the attorney fee request or award and does not argue the issue in its brief. Thomas' independent counsel did not file a brief in this appeal.

Appellate courts apply a two-part review to attorney fee awards. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). First, we review de novo whether a legal basis exists for awarding attorney fees. Id.; Niccum v. Enquist, 175 Wn.2d 441, 446, 286 P.3d 966 (2012). We review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion. Gander, 167 Wn. App. at 647; In re Marriage of Freeman,

---

[4] Morris also lists as an issue pertaining to his assignment of error to this ruling whether the superior court exceeded the scope of review allowed by RCW 2.24.050 when it discussed the allegations of financial exploitation in its oral ruling. He does not argue this issue in his brief. "An assignment of error that is not argued in the brief cannot be considered." Sepich v. Dep't of Labor & Indus., 75 Wn.2d 312, 319, 450 P.2d 940 (1969). We decline to consider this issue in the absence of argument.

169 Wn.2d 664, 676, 239 P.3d 557 (2010); Rettkowski v. Dep't of Ecology, 128 Wn.2d 508, 519, 910 P.2d 462 (1996).

When determining the meaning of a statute, the court's objective is to ascertain and carry out the legislature's intent. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "When possible, the court derives legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017).

"In Washington, '[a]ttorney fees may be recovered only when authorized by statute, a recognized ground of equity, or agreement of the parties.'" Niccum, 175 Wn.2d at 446 (alterations in original) (quoting Perkins Coie v. Williams, 84 Wn. App. 733, 742–43, 929 P.2d 1215 (1997)). Under the Abuse of Vulnerable Adults Act (AVA), the court is authorized to "order relief as it deems necessary for the protection of the vulnerable adult, including . . . [r]equiring the respondent . . . to reimburse the petitioner for costs incurred in bringing the action, including a reasonable attorney's fee." RCW 74.34.130.

The issue is whether the word "petitioner" as used in this statutory provision includes the protected vulnerable adult when DSHS petitions for a VAPO on the vulnerable adult's behalf. "Petitioner" is not defined in the AVA. When a word is not defined in a statute, the reviewing court gives the word its usual and ordinary meaning. State v. Standifer, 110 Wn.2d 90, 93, 750 P.2d 258 (1988). "Petitioner"

is generally defined as "[a] party who presents a petition to a court or other official body, esp[ecially] when seeking relief on appeal." Black's Law Dictionary (11th ed. 2019).

The AVA provides that a vulnerable adult or an interested person on behalf of the vulnerable adult may file a petition for a VAPO. RCW 74.34.110(1). DSHS may file a petition for a VAPO on behalf of and with the consent of a vulnerable adult. RCW 74.34.150; RCW 74.34.210. Multiple provisions of the AVA draw a distinction between the petitioner and the vulnerable adult when another party files the petition on behalf of a vulnerable adult. See RCW 74.34.110(2) ("A petition shall allege that the petitioner, or person on whose behalf the petition is brought, is a vulnerable adult."); RCW 74.34.110(3) ("If the petition is filed by an interested person, the affidavit or declaration must also include a statement of why the petitioner qualifies as an interested person."); RCW 74.34.135(3) ("At the hearing scheduled by the court, the court shall give the vulnerable adult, the respondent, the petitioner, and in the court's discretion other interested persons, the opportunity to testify and submit relevant evidence.").

Here, Thomas accepted assistance with a protection order from DSHS, and DSHS filed the petition for a VAPO on his behalf. The petition was signed by APS nurse Martha Gagnon as petitioner and Assistant Attorney General Jennifer Boharski as attorney for petitioner. Although Thomas directed his independent counsel to respond to the motion to vacate under CR 60(b), DSHS also submitted a response to the motion.

Considering the text and context of RCW 74.34.130, it appears that the legislature did not intend for the word "petitioner" to include the vulnerable adult when DSHS petitions for a VAPO on the vulnerable adult's behalf. The AVA repeatedly distinguishes between a petitioner and the vulnerable adult when the vulnerable adult does not file a petition for a VAPO on their own behalf. Because Thomas was not the petitioner in the VAPO proceeding, RCW 74.34.130 does not provide a legal basis for the award of attorney fees to him. The court erred in awarding him attorney fees under this statute.[5]

D. Agreed Application to Vacate the VAPO

When a vulnerable adult who has not been adjudicated fully incapacitated applies to the court for modification or vacation of a VAPO, "the court shall grant such relief consistent with RCW 74.34.110 as it deems necessary for the protection of the vulnerable adult, including dismissal or modification of the protection order." RCW 74.34.163. The parties do not dispute that Thomas was entitled to bring a motion to vacate under RCW 74.34.163. However, DSHS argues that Morris lacked standing to move to vacate the VAPO or for revision of the commissioner's order denying the motion and that he lacks standing to represent Thomas' interests on appeal. We will reach the merits of Morris' argument, assuming without deciding that the denial of the application to vacate was properly before the superior court on revision and is properly before us on appeal.

---

[5] Because we find that there was no legal basis for the award of attorney fees, we do not reach Morris' argument that the amount of fees imposed was unreasonable.

1. Standard of Review

Appellate courts review a superior court's decision to grant or deny a petition for a VAPO for abuse of discretion. In re Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014) (published in part).  The Washington Supreme Court has noted in the context of a domestic violence protection order that "[w]hether to grant, modify, or terminate a protection order is a matter of judicial discretion." Freeman, 169 Wn.2d at 671.  Vacation or modification of a VAPO once entered is also a discretionary determination and is reviewed for an abuse of discretion.

As stated above, a court abuses its discretion if the exercise of its discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Carroll, 79 Wn.2d at 26.  "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion." Dix v. ICT Group, Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).  Again, factual findings are reviewed for substantial evidence. Sunnyside Valley, 149 Wn.2d at 879. "We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).  We cannot review a fact-finder's credibility determinations on appeal. Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

2. Evidence and Arguments Considered

Morris raises a number of arguments contending that the superior court should not have considered the remarks that Thomas and his counsel made in court, the response submitted by DSHS, or the psychological assessment made

by Dr. Edwards accompanying the response. It should be noted that the rules of evidence need not apply in protection order proceedings, including those under chapter 74.34 RCW. ER 1101(c)(4); Gourley v. Gourley, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006).

Morris argues that the "unsworn statements" of Thomas and his attorney do not "comply with the requirement for sworn statements in a VAPO proceeding" found in RCW 74.34.110. That statute requires that a petition for a VAPO "be accompanied by affidavit made under oath, or a declaration signed under penalty of perjury, stating the specific facts and circumstances which demonstrate the need for the relief sought." RCW 74.34.110(3). He appears to argue that, because RCW 74.34.163 provides that the court should grant relief on a vulnerable adult's motion to vacate "consistent with RCW 74.34.110[,]" all statements submitted at all stages of a VAPO proceeding must be made under oath. This expansive reading is not supported by the language of the statutes, and he does not cite any other applicable authority for it.

He also argues that the court should not have considered these statements because they were not open to cross-examination or given under oath. A party is not denied their right to cross-examination when they do not seek to subpoena a witness or move the court to issue a subpoena. See In re Gourley, 124 Wn. App. 52, 58, 98 P.3d 816 (2004). Morris does not point to any request that Thomas or his counsel be sworn, request to cross-examine them, or effort to subpoena them, nor is any such action apparent from the record.

Morris argues briefly that DSHS should not have been permitted to respond to the application to vacate the VAPO because Thomas had withdrawn his consent to receive APS services. DSHS argues that its continuing role in this matter is "appropriate and necessary for the protection of the vulnerable adult under the circumstances." The AVA allows DSHS to seek relief on behalf of a vulnerable adult with the vulnerable adult's consent or "[w]hen the department has reason to believe a vulnerable adult lacks the ability or capacity to consent." RCW 74.34.150. In its response to the application to vacate, DSHS stated that it had an "ongoing concern" for Thomas based on Dr. Edwards' assessment finding that he had been unduly influenced by Morris, that he has some dementia, and that his health had declined between November 2016 and July 2017. Although DSHS did not explicitly state that it had reason to believe Thomas lacked capacity to consent to receipt of services or to revoke his prior consent, its continued involvement appears to be authorized by the statute and the fact that it was a party to the underlying proceedings.

Finally, Morris argues that the court should not have considered the "unsworn psychological assessment" of Dr. Edwards. His arguments regarding Dr. Edwards' report chiefly concern the credibility or weight to be given to her conclusions, which we cannot review. Morris has not demonstrated that the court erred in considering these arguments and evidence.

### 3. Standard of Proof for Vacation of VAPO

Morris argues that the superior court misinterpreted RCW 74.34.163 and applied the wrong standard of proof to the motion to vacate. He contends that, to

properly deny a vulnerable adult's application to vacate a VAPO, the court must ensure that clear, cogent, and convincing evidence does not exist showing that the vulnerable adult requires continuing protection from the restrained person. The case that Morris cites in support of this contention concerned a VAPO that was granted against the protected person's wishes. Knight, 178 Wn. App. at 935–36. Division Two of this court held that, "because a contested vulnerable adult protection order case implicates the vulnerable adult's liberty and autonomy interests like a guardianship does, the standard of proof for a vulnerable adult protection order contested by the alleged vulnerable adult is clear, cogent, and convincing evidence, as it is with a guardianship." Id. at 940.

The problem with Morris' argument is that the superior court in this case was not convinced that Thomas actually wanted the VAPO vacated. The court's decision was based on its assessment of the credibility of Thomas' declaration stating that he wanted the VAPO to be lifted. We cannot review this credibility determination and may only assess whether there was sufficient evidence for the court's factual finding that Thomas was not earnestly asking for vacation of the VAPO.

In his remarks to the commissioner, Thomas did not state that he wanted the VAPO lifted. His independent counsel stated to the commissioner, "I'm not convinced that as his attorney and on his behalf, I can actually state what his wishes actually are." Dr. Edwards' report concluded that Thomas is subject to influence, particularly from Morris. The motion to vacate was presented as a "joint application" between Thomas and Morris and was prepared by Morris' attorney.

There was sufficient evidence in the record to support the court's finding that Thomas was not earnestly requesting vacation of the VAPO. The court did not abuse its discretion in denying the application to vacate.

II.     Attorney Fees on Appeal

Morris requests an award of attorney fees on appeal under RAP 18.1. "Reasonable attorney fees are recoverable on appeal if allowed by statute, rule, or contract" and properly requested under RAP 18.1. In re Guardianship of Wells, 150 Wn. App. 491, 503, 208 P.3d 1126 (2009). Morris contends that the CR 2A settlement agreement entered in the separate civil case between Thomas and Morris provides a basis for the fee request. DSHS was not a party to that agreement and therefore is not bound by its provisions.

Morris does not identify any other basis for an award of attorney fees on appeal in his opening brief. In his reply brief, he argues that this court should impose fees and costs against DSHS as a sanction under CR 11. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We decline to consider this argument because it was raised for the first time in reply. Accordingly, Morris has not shown a basis for an award of attorney fees on appeal and we deny his request for fees.

III.    Motion to Modify Dismissal of Case No. 79860-0

Through counsel appearing for the limited purpose of arguing this motion, Morris requests that we modify the clerk's ruling dismissing the appeal in the linked

case and reinstate the appeal. Both Thomas' independent counsel and DSHS oppose modification of the clerk's ruling.

The court of appeals has the authority to "perform all acts necessary or appropriate to secure the fair and orderly review of a case." RAP 7.3. The appellate court may waive or alter the provisions of any of the rules of appellate procedure and enlarge time within which an act must be done in order to serve the ends of justice. RAP 18.8(a). "The appellate court may condition a party's right to participate further in the review on compliance with terms of an order or ruling." RAP 18.9(a). The clerk of the court of appeals may dismiss a review proceeding for noncompliance with an order of the court on 10 days' notice to the parties. RAP 18.9(b).

An aggrieved party may object to the dismissal by a motion to modify the clerk's ruling directed to the judges of the court. RAP 17.7(a); RAP 18.9(b). When a party moves to modify a commissioner's ruling under RAP 17.7, we review the ruling de novo. State v. Nolan, 98 Wn. App. 75, 78, 988 P.2d 473 (1999). We apply this standard to a motion to modify the clerk's ruling under the same rule.

Morris advances a number of reasons why that reinstatement of the appeal would serve the ends of justice. He argues that his three motions for extension of time to file his opening brief "were principally based on unanticipated circumstances beyond his control" and were not "filed to gain a tactical advantage." He also argues that no other party objected to his requests for extension and therefore "no party has been prejudiced by [his] inability to timely file his opening brief." He argues that his appeal "raises several issues of substantial public

interest, namely a family unit's right to be free from unwanted and unwarranted government intrusion; a vulnerable adult's right to self-determination; and the public's right to rely on court-validated contracts with a vulnerable adult."

Courts hold pro se litigants to the same standards as attorneys. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Morris received extensions totaling over three months of extra time to file his opening brief. The clerk provided him with 40 days' notice that the appeal would be dismissed if he did not meet the filing deadline set in the October 18, 2019 notation ruling. The clerk had a valid basis to dismiss the appeal under RAP 18.9.

We deny the motion to modify the clerk's ruling dismissing the case because the clerk had a valid basis to dismiss and Morris has not shown that the ends of justice demand reinstatement of the appeal.

Affirmed in part, reversed in part. The motion to modify the clerk's ruling dismissing the linked appeal is denied.[6]

WE CONCUR:

_____
Chun, J.

_____
Leach, J.

[6] After oral argument, Morris filed a motion asking this court to take judicial notice of the superior court's April 13, 2018 order confirming the CR 2A agreement under ER 201 and RAP 9.11. Because the order was included in the record of the linked case, No. 79860-0, we deny the motion. Morris' request for sanctions is also denied.