[No. 23613-7-III.   Division Three.   August 2, 2005.]

*In the Matter of the Marriage of* SHAWNNA J. HUGHES, *Appellant,* and CARLOS A. HUGHES, *Respondent.*

*Carlos Alonzo Hughes*, pro se.

*Terri D. Sloyer* and *Breean L. Beggs* (of *Center for Justice*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Paul G. Cornelius* and *Mary C. Valentine, Deputies*, for the State.

*Trilby Robinson-Dorn* and *Kristin J. Boraas* on behalf of Naral Pro-Choice Washington, Stop Family Violence, American Civil Liberties Union of Washington, American Civil Liberties Union Women's Rights Project, Refugee and Immigrant Forum, Washington Coalition of Sexual Assault Programs, and Washington State Coalition Against Domestic Violence, amici curiae.

*Michael R. Heath* on behalf of National Advocates for Pregnant Women, National Association of Women Lawyers, and National Network To End Domestic Violence, amici curiae.

*Nancy L. Sapiro* on behalf of Family Violence Prevention Fund, National Coalition Against Domestic Violence, Northwest Women's Law Center, and Washington NOW, amici curiae.

¶1 BROWN, J. — In a default judgment, essential due process limits the relief a court can grant to that asked for in the petition or complaint. Here, Shawnna Hughes took a default dissolution decree varying significantly from the petition served on her husband, Carlos Hughes. In the default papers, Ms. Hughes changed her pregnancy status to pregnant and denied Mr. Hughes' paternity. Further, Ms. Hughes failed to respond to the State's support enforcement inquiry about her pregnancy status before she entered her default decree. At the State's urging, the court vacated the decree after a hearing. Because Ms. Hughes' actions vio-

lated fundamental due process and fairness principles in dealing with Mr. Hughes and the State, two reasons unrelated to her pregnancy, the trial court did not err in vacating the default decree. Requiring Ms. Hughes to fairly give due notice and an opportunity to be heard to Mr. Hughes and the State will cause delay. But, just delay is not justice denied. Accordingly, we affirm.

## FACTS

¶2 On April 15, 2004, Ms. Hughes filed and served a petition to dissolve her marriage, alleging she was not pregnant. Mr. Hughes was in jail when served and apparently remained incarcerated throughout these events. He did not respond to the petition. Under RCW 74.20.220(1)-(3), the State appeared because Ms. Hughes received public assistance for the parties' two children. The State asked for "all further pleadings herein be forwarded to [Mary Valentine]" at the Prosecuting Attorney's Office, Family Law Department. Clerk's Papers (CP) at 132. In August, Ms. Valentine wrote to Ms. Hughes' lawyer, Terri Sloyer, requesting her client's updated pregnancy status, indicating she had reason to believe Ms. Hughes was pregnant, and noting: "As you know, this will delay resolution of this dissolution matter." CP at 236.

¶3 Ms. Sloyer had knowledge of her client's pregnancy by September 14 when Ms. Hughes signed the final default papers, including her declaration specifying she was pregnant and Mr. Hughes was not the father. Ms. Sloyer did not inform the State of her client's pregnancy status, despite the State's inquiry. Ms. Hughes failed to amend her petition to reflect her changed status and serve it on Mr. Hughes, the presumed father under state law, or otherwise give Mr. Hughes any notice of the facts varying from the petition.

¶4 In October, Ms. Sloyer sent the State a proposed child support order covering the two existing children without the revised final papers or paternity declaration. Draft support orders were exchanged and conversations ensued,

still without mention of Ms. Hughes' pregnancy. Ms. Valentine declared she "did not remember the issue of Petitioner's possible pregnancy" when considering the support order and thus, on October 25, she signed and returned it by facsimile. CP at 225.

¶5 On October 26, without notice to Mr. Hughes or the State, Ms. Hughes presented the nonconforming default dissolution papers and paternity declaration prepared September 14 to a pro tem court commissioner. Contrary to the petition's paragraph 1.12, paragraph 2.15 of the Findings of Fact shows, "PREGNANCY. The wife is pregnant. The father of the unborn child is not the husband."[1] CP at 152.

¶6 On October 27, Ms. Valentine remembered the unresolved pregnancy issue and contacted Ms. Sloyer, who then revealed Ms. Hughes' pregnancy and related she had entered the final papers the previous day. At a scheduled status conference on October 28, the State raised the issue with the trial judge who coordinated a November 4 show cause hearing. On November 4, after briefing and argument, the court orally ruled to vacate the October 26 dissolution decree.[2]

¶7 First, the court reasoned Ms. Hughes failed to give notice to the State about the change in pregnancy status, undermining the State's ability to resolve the presumed paternity issue under RCW 26.26.116. And, the court found Mr. Hughes was deprived of an opportunity to be heard because he received final papers different in kind from the petition. The court believed Ms. Hughes "attempted to

---

[1] RCW 26.09.006 and RCW 26.18.220 mandate the use of approved dissolution forms, requiring disclosure of the wife's pregnancy status and whether the husband is the father.

[2] Ms. Hughes' motion to strike the trial court's memorandum opinion filed here as Supplemental Clerk's Papers after we granted review has been referred to this panel for decision. Under RAP 7.2(a), the trial court does not have the authority to act without permission from this court, once this court has accepted review of a case. Courts have previously declined to consider memorandum opinions filed after an appeal has been accepted. *See Mallott v. Randall,* 7 Wn. App. 753, 756, 502 P.2d 1249 (1972). Further, the memorandum opinion merely summarizes the court's oral opinion, which was incorporated into the final order. Given all, we grant the motion to strike.

disestablish paternity in contravention of [RCW] 26.26-.550." Record of Proceedings (RP) at 32.

¶8 Second, the court rejected her argument she was "being deprived of her right to dissolve her marriage [based upon her pregnancy], she's not deprived of that, absolutely not." RP at 32. The court reasoned, "[h]er marriage could be dissolved with full disclosure to Mr. Hughes that she is pregnant, and he may legally be the father under the law, which was not done." RP at 32. The court held the relief granted in the decree exceeded the relief requested in the dissolution petition. The court explained why the first problem settled the matter:

> We don't need to go any further because that voids the decree in and of itself, in my view. I think it is very clear, he was not put on notice as to what his legal status is here, was not served with the documentation.

> It may have been true and correct at the time that the petition was filed, but it wasn't true at the time the final documents were entered.

> And there is a basic principle: You cannot in a default ask for more or ask for something different than what you asked for in the papers originally served.

RP at 32-33.

¶9 The court observed, "not only is it the policy of this Court, it is the policy of the [S]tate that you cannot dissolve a marriage when one of the parties is pregnant." RP at 31. The court characterized the situation as a "legal nightmare." RP at 35. Finally, the court concluded:

> But even more than [the legal nightmare], the initial issue is, Mr. Hughes wasn't given notice. You entered a decree that was contrary to the documents that were served on him. He has a right to be here. He had a right to be here at the time the decree was entered.

> If you were going to try to take a default at that time, you needed to serve him and give him notice that his rights as a father or as a nonfather were being determined in that matter. It wasn't done.

> The decree will be vacated.

RP at 35-36. Ms. Hughes appealed the trial court's decision to vacate the decree.

## ISSUE

¶10 The issue is whether the trial court erred by abusing its discretion in vacating Ms. Hughes' default decree based upon the following grounds: (1) it was different in kind from that sought in the petition because Ms. Hughes amended her pregnancy status and denied Mr. Hughes' paternity; and (2) Ms. Hughes failed to notify the State of the changes and failed to forward the relevant information or pleadings after the State's request.

## ANALYSIS

¶11 The issue is whether the trial court abused its discretion in vacating Ms. Hughes' default decree because it obtained relief different from that sought in the petition, and because Ms. Hughes failed to notify the State of her changed circumstances.

¶12 Ms. Hughes and amici[3] incorrectly cast the issue as a constitutional denial of Ms. Hughes' right to dissolve her marriage. The trial court rejected the proposition she was "being deprived of her right to dissolve her marriage, she's not deprived of that, absolutely not." RP at 32. While recognizing there would be a delay, the court correctly reasoned "[h]er marriage could be dissolved with full disclosure to Mr. Hughes that she is pregnant, and he may legally be the father under the law, which was not done." RP at 32.

¶13 Denying a marriage dissolution because a woman is pregnant would violate Washington's equal rights amendment (ERA). WASH. CONST. art. XXXI, § 1. "The ERA abso-

---

[3] The American Civil Liberties Union filed one amicus brief and the National Network to End Domestic Violence, the National Association of Women Lawyers, and National Advocates for Pregnant Women jointly filed another; and Washington NOW also filed one.

lutely prohibits discrimination on the basis of sex and is not subject to even the narrow exceptions permitted under traditional 'strict scrutiny'. " *S.W. Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County,* 100 Wn.2d 109, 127, 667 P.2d 1092 (1983) (citing *Darrin v. Gould,* 85 Wn.2d 859, 872, 540 P.2d 882 (1975)). Here, Ms. Hughes' pregnancy was not the basis for vacating the decree; the court gave two constitutionally based reasons for vacating the decree.

¶14 We review a trial court's decision to vacate a default decree for abuse of discretion. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). "The motion to vacate is addressed to the sound discretion of the trial court[,] and this court, on appellate review, will not disturb the trial court's disposition unless it clearly appears that that discretion has been abused." *Id.* A trial court abuses its discretion if "it is exercised on untenable grounds for untenable reasons." *In re Marriage of Tang,* 57 Wn. App. 648, 653, 789 P.2d 118 (1990).

¶15 Here, the trial court found procedural irregularities existed in obtaining the default decree because of Ms. Hughes' failure to amend her petition to reflect the new pregnancy and serve the amended petition on Mr. Hughes. A court lacks jurisdiction to grant relief without notice and opportunity to be heard. *In re Marriage of Leslie,* 112 Wn.2d 612, 617, 772 P.2d 1013 (1989). In light of the statutory paternity presumption, the court correctly reasoned this failure to provide notice deprived Mr. Hughes of his right to be heard in response.

¶16 Further, the default decree was fundamentally unfair to the State. Ms. Hughes' counsel did not respond to the State's August pregnancy clarification request, even though she possessed this information by September 14, six weeks before seeking the default decree. Ms. Hughes' counsel did not forward the relevant September 14 documents to the State, contrary to the State's notice of appearance requesting new pleadings. In light of the statutory paternity presumption and the State's important interests, the lack of

notice until the day after entry of the default decree resulted in a procedural due process failure to the State as well.

¶17 The court correctly decided the default decree papers differed significantly from the petition served on Mr. Hughes, violating CR 54(c). The mandatory dissolution petition forms require disclosure of the wife's pregnancy status and whether the husband is the father. "When a judgment or decree is entered by default, it 'shall not be different in kind from or exceed the amount that [was] prayed for in the demand for judgment.'" *In re Marriage of Johnson,* 107 Wn. App. 500, 503-04, 27 P.3d 654 (2001) (quoting CR 54(c)). Indeed, "a court has no jurisdiction to grant relief beyond that sought in the complaint." *Leslie,* 112 Wn.2d at 617. Therefore, the court had no choice but to vacate the default to the extent it differed from the original petition. *See id.; see also Johnson,* 107 Wn. App. at 504.

¶18 Domestic relations courts generally do not permit bifurcation of issues such as custody, support, maintenance, and property ancillary to dissolution when the parties' respective interests can be determined in a single litigation. *In re Marriage of Little,* 96 Wn.2d 183, 189, 634 P.2d 498 (1981); *Byrne v. Ackerlund,* 108 Wn.2d 445, 457, 739 P.2d 1138 (1987). Paternity directly affects the residential placement and support issues here. We do not address the parties' paternity arguments, because the trial court has yet to resolve that issue.

¶19 Moreover, the State's important interests were denigrated. *See* RCW 74.20.330(1); 42 U.S.C. § 602. Neither Mr. Hughes nor the State received notice of the final default decree entry or its terms. The default decree differed "in kind" from the original petition. *See* CR 54(c). Ms. Hughes was not forthcoming in dealing with the State, offending fairness principles equally essential for due process. Partly voiding the decree as suggested by Ms. Hughes does not remedy the due process violations and would result in a disfavored bifurcation. Given all, the court had no choice but to vacate the default decree under CR 54(c) and did not

abuse its discretion. Following correct procedures may be time consuming, but the delay satisfies basic procedural due process and fairness principles.

¶20 Affirmed.

SWEENEY, A.C.J., and SCHULTHEIS, J. concur.

Review denied at 156 Wn.2d 1031 (2006).