IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CHAD A. SCHAEFER,

　　　　　　　Appellant,

　　v.

HEATHER M. KIER,

　　　　　　　Respondent.

No. 84408-3-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Chad Schaefer and his former partner, Heather Kier, have an acrimonious litigation history that spans more than a decade. The current appeal arose from Schaefer's petition to modify the final parenting plan. After Kier failed to respond to the petition, Schaefer obtained an ex parte default order and entry of his proposed parenting plan. Kier successfully moved to vacate the plan, but not the order of default. At the hearing for presentation of final orders, Kier appeared pro se and objected. Schaefer argues that the trial court erred by considering unsworn testimony from Kier and not entering the parenting plan that he proposed. We disagree and affirm.

FACTS

Kier and Schaefer share two daughters. At the time of the 2022 proceedings, C.J.S. was 13 years old, and C.D.S. was 17 years old. During the course of the parents' relationship, "there was tension, conflict, and physical aggression." Schaefer engaged in a pattern of domestic violence against Kier and frequently abused alcohol

during the relationship. The pair finally separated in 2010 and have litigated their parenting plan since. The proceedings between Kier and Schaefer have been marked by "a lot of acrimony" and "a lot of litigation."[1]

The trial court initially entered a parenting plan in 2012. That plan "afford[ed] each parent substantially equal residential time with their two children." Schaefer, slip op. at 2.

In 2020, the plan was modified. The modified plan placed limitations on Schaefer pursuant to RCW 26.09.191. The trial court found that Schaefer had a history of domestic violence, used conflict in an abusive way that endangered or damaged the psychological development of the younger child, and found that Schaefer had withheld C.J.S. from Kier without good reason. As a result, Schaefer was ordered to obtain a domestic violence assessment, a chemical dependency assessment, and to comply with any treatment recommendations following the evaluations. The court noted that if Schaefer failed to comply with those requirements, his residential time could be restricted and or require supervision.

Following a three-day trial, the trial court entered numerous factual findings regarding the history of domestic violence and abusive use of conflict between Schaefer and Kier. The trial court found Kier and her accounts of Schaefer's domestic violence and abusive use of conflict to be credible. It however, found that Schaefer's repeated denials and defensiveness were "not credible." The court found that despite the fact that the parties had "barely spoken" since their 2010 separation, Schaefer "still clearly

---

[1] This is Schaefer's second appeal regarding the parenting plan between himself and Kier. See Schaefer v. Kier, No. 79134-6-1, slip op. (Wash. Ct. App. Jan. 13, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/791346.pdf.

attempts to exert control over [Kier] by engaging in abusive use of conflict." At that point, Schaefer had filed the lion's share of the 400 motions in the case.[2]

The trial court then noted its concerns that Schaefer was alienating C.D.S. against Kier and that at the time the parenting plan was entered in 2020, C.D.S. had primarily lived with Schaefer for the year prior. A parenting evaluator report adopted by the trial court noted that Schaefer "continued to accuse the mother of having mental health issues as a way to 'degrade and blame' her" despite a psychological evaluation indicating Kier's parenting was not impaired by mental health concerns. The report also reflected that Schaefer had failed to engage in court-ordered domestic violence evaluation and treatment following the 2012 parenting plan and noted concerns that if he failed to address those problems, he "may engage [the] children in these acts," creating "significant and long-lasting negative consequences" for the relationship between the children and Kier.

The trial court concluded that it was in the best interests of both children to live primarily with Kier, noting that while "not perfect," she "recognizes her imperfections and strives to remedy them" demonstrating "a capacity for growth."

The 2020 plan granted decision-making power to Kier alone and required that the parties return to court to resolve any disputes. The children were to reside primarily with Kier and Schaefer was granted time with the children every other weekend between Friday afternoon and Sunday evening. The plan further prohibited both parties from "denigrating one another in the presence of the children" under threat of limiting time with any parent who violates the prohibition. The parties were limited to using "Our

---

[2] At the time of the most recent presentation of final orders on July 22, 2022, there were 633 filings in the record.

Family Wizard"[3] for all communications except in the case of emergency. Schaefer was not permitted to communicate with the children during Kier's residential time until he completed recommended domestic violence treatment. Kier was free to communicate with the children during Schaefer's residential time and Schaefer was specifically prohibited from interfering with or monitoring the communication "in any way."

On May 3, 2021, Schaefer filed a motion for contempt, alleging that Kier had failed to comply with the parenting plan. Schaefer stated that Kier had not allowed Schaefer any contact with the children, in violation of the 2020 parenting plan, after the expiration of a protective order in March 2021. Schaefer further alleged violations of the plan regarding financial and tax arrangements. Kier did not respond to the motion. In July, the trial court found that Kier was in contempt for failing to follow several provisions of the parenting plan, including failing to adhere to the parenting plan schedule after the protective order expired.

In June, prior to the trial court's order finding Kier in contempt, Schaefer petitioned to modify the parenting plan. To support his request, Schaefer stated that C.D.S. no longer lived with her mother and alleged that Kier had been abusive toward C.D.S. Schaefer also alleged that Kier had withheld C.J.S. from him since March 2020 and he had not seen C.J.S. at all in that time.

Schaefer submitted a proposed parenting plan requesting numerous limitations be placed upon Kier. Schaefer requested that the court find Kier had abandoned, neglected, and abused their children, and that Kier had an emotional problem that

---

[3] Our Family Wizard is an online and mobile application platform that provides parents with tools for communication, scheduling, and sharing information about the children. Pribic v. Erickson, No. 81257-2-I, slip op. at 2 n.3 (Wash. Ct. App. March 15, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/812572.pdf.

interfered with her ability to parent. He requested that Kier undergo a mental health evaluation and take parenting classes and that the court suspend any visitation for failure to comply. Schaefer also requested to be the sole decision-maker for the children. Schaefer sought to change the required dispute resolution method from going to court to going through mediation and asked that all communications occur through phone calls and text messaging on the parents' personal devices, rather than through the "Our Family Wizard" system previously required. As to parenting time, Schaefer proposed a plan in two phases. In the first phase, he requested that the children reside primarily with him, allowing Kier six hours of visitation each Sunday, supervised by a "forensic psychologist." The second phase, following Kier's compliance with the evaluation and treatments sought by Schaefer, would allow her to have the children every other weekend between Friday and Monday, with an option for a visit on Wednesdays. The second phase also created ways to deprive Kier of these Wednesday visits, deeming them waived if she did not email Schaefer to arrange them 48 hours beforehand and forfeited if she failed to take the children to any scheduled events or provide transportation. Kier did not respond to the petition.

In July, the court declined to find adequate cause to change the parenting plan because Schaefer had failed to establish a substantial change in circumstances of the children or the nonmoving party and did not show that modification would be in the best interests of the children. The motion for adequate cause was denied without prejudice. Kier did not respond to the motion.

In October, Schaefer filed a second motion for contempt, stating that Kier had continued to ignore the visitation schedule, causing him to miss 38 overnights, two

holidays, and his vacation time with the children.  The trial court issued an order finding Kier in contempt in November.  Kier did not respond to the motion.

Following the entrance of a second order of contempt, totaling eight months of litigation with no response from Kier, Schaefer moved in November for an ex parte default order on his petition to modify the parenting plan.  A pro tem commissioner granted the motion.  The commissioner found Kier was properly served with a summons and petition and any other documents listed in the proof of service filed with the court.  The commissioner found Kier in default for failing to respond to the petition and ordered that the "court may sign orders and hold hearings in this case without notice to the defaulted party."  Schaefer noted a hearing on the ex parte commissioner calendar to present final orders for modification with a restraining order.  After the matter came before a superior court judge through the Family Law Agreed Orders Queue, the judge through a January 7 written amended order denied the entry of final orders noting "irregularities which must be corrected prior to entry of final orders."[4]  The court instructed that if the petitioner believed there was a basis to renew a notation for entry of final orders, that it "shall be noted before the assigned judge, with notice to the mother, including e-service and mailing to her last known address."  The court encouraged the petitioner to bring a motion to continue the trial date and to extend the deadline for adequate cause to an assigned pro tem judge.

In February, Schaefer filed an amended petition to modify the parenting plan

---

[4] The court held that "[n]otwithstanding entry of the Order of Default, it would not be appropriate to enter final orders by default."  The court observed irregularities in service of documents.  It also noted that a previous judge had entered an order denying adequate cause on July 14, 2021 and the moving party had failed to re-note a motion for adequate cause.  The court previously denied the motion for default, which it corrected through its amended order after it realized it had overlooked the November 12 order of default signed by a commissioner.

and an amended motion for adequate cause on the basis that Kier had been found in contempt on two occasions. A pro tem judge granted Schaefer's motion to continue the trial date and issue a new case schedule. Kier again did not respond to the motion to continue.

Subsequently, on March 10 a commissioner granted Schaefer's amended motion for adequate cause because Kier had been found in contempt twice and because C.D.S. had been residing with Schaefer since August 2021, and petitioner had provided completion of an evaluation ordered in the current parenting plan. The commissioner noted that the deadline for filing a response to the petition had passed. The commissioner ordered that a hearing or trial on the modification would take place and ordered that the youngest child be immediately released to Schaefer. The commissioner also immediately granted Schaefer's motion for an order of default. It ruled that "[t]he court may sign orders and hold hearings in this case without notice to the defaulted party." Kier did not appear at the hearing. On May 3, a different commissioner approved, ex parte, a final order and findings on the petition to change the parenting plan, and a final parenting plan presented by Schaefer's counsel.

On May 10, Kier filed a motion to vacate the judgment and order. In a declaration Kier asserted that Schaefer had gone to C.J.S.'s school and took her after presenting court orders that Kier said she was never served with and did not have the opportunity to respond. Kier requested all orders entered in default be vacated. The next day, the chief unified family court judge ordered Schaefer to show cause on May 25 as to why the court should not grant Kier's request.

At the May 25 hearing, Schaefer's counsel appeared and Kier appeared pro se.

The trial court granted the motion in part and denied in part. The trial court vacated the May 3, 2022 orders on modification, the final parenting plan, and the order for determination of adequate cause. While recognizing that there had been calendaring issues,[5] the court observed that a previous judge in its January 3 and 7 orders "specifically forbade this matter proceeding by way of default and directed that the case be set before the assigned judge for entry of final orders." However, the court denied the motion to vacate the order of default because it was properly noted and served on Kier. The court then reassigned the case to a trial judge before "whom a presentation hearing on final orders should be scheduled." The court also extended the deadline for submitting adequate cause to mid-July, but that the previously set September trial date remained, with the understanding that the trial date may be impacted by the court's date change.

A hearing for the presentation of final orders was set in July. Kier appeared pro se. Counsel represented Schaefer at the hearing. The trial court did not allow Kier to present proposed final orders because she was in default, but did permit her to argue in her capacity as a pro se respondent.

At the beginning of the hearing, the trial court noted that it was required to find

---

[5] Despite the January 7 order directing petitioner to note entry of orders before the assigned judge, the record shows conflicting communications as to where Schaefer should file motions. The assigned pro tem judge's bailiff suggested that it required a stipulation to jurisdiction filed "by the moving party at the very least." When Schaefer filed motions for adequate cause and default, the clerk's office rejected the filing and said the motion must be filed with the same judge who entered the 2020 parenting plan because that judge had retained jurisdiction. However, that judge on September 13, 2021 had entered an order stating she mistakenly retained jurisdiction on the original petition to modify and that the case was assigned to the judge pro tem. Later when Schaefer filed proposed final orders ex parte, the clerk's office responded explaining that the proposed ex parte orders were not eligible to be processed through the clerk's office and must be presented to the "Ex Parte and Probate Department" directly.

that any parenting plan entered was in the best interests of the children and could not impose a plan otherwise. The trial court found adequate cause to modify and then ordered a final parenting plan. The final parenting plan largely retained the requirements imposed in the plan entered in 2020. The plan retained the limitations placed upon Schaefer for domestic violence, abusive use of conflict, and withholding, while adding a limitation on Kier based on the contempt orders for failing to follow the previous parenting plan and failing to respond resulting in default judgment. Kier was required to engage in a parenting class and to enroll the children in reunification therapy. The plan permitted the children to live primarily with Kier and to spend every other weekend from Friday afternoon to Monday morning with Schaefer. Kier remained the decision maker for the children. The plan continued to require parents to resolve disputes through the court and communicate exclusively through "Our Family Wizard," except for emergencies. The trial court did not find that Kier improperly withheld the children,[6] but did admonish Kier at the hearing:

> I will also say that I have significant concerns about withholding. And, Ms.

_____

[6] During the hearing, counsel for Shaefer explained that the older daughter was already living with the father, as asserted in the petition to modify, when he picked up the younger daughter at school following the previously entered default parenting plan before it had been vacated. When the trial court tried to clarify how long the father had not seen both children, Shaefer's counsel acknowledged that the older daughter was no longer living with the father and that she thought she left the father's home with a boyfriend and "now is back with Ms. Kier, and . . . you know, she's at the age now where they don't have a whole lot of control over her." To support his assertion that Kier was withholding the younger daughter, Shaefer submitted with his October 2021 declaration partial screenshots of an undated text message he said he received from his youngest daughter in August of 2021 that said, "Hello chad I'm aware you want to see me but I do not want to see you please leave me alone I don't want to see you today or any other day do not come today because I will not come with you sorry if it's inconvenient for you but I have been very upset with you and I do not feel ready to see you my mom wants me to if I'm comfortable with". The rest of the text message was not included. In his October 2021 declaration, Schaefer said that the last time he talked with the youngest daughter in February 2020 she had no problem with him and in a handwritten letter "said that she had to cut me off." Despite a reference to the letter as an exhibit in his declaration, the letter does not appear to have been included.

9

Kier, you need to figure how these children are going to reconnect to their father. You have not only an order to do it that you're in violation of, you have a moral responsibility. And you do not want to appear in front of this Court again, without these children having had a physical interaction with their father. I will tell you that. And I know Judge McKee has already read the Knight warnings in this case. And I'll read them again, if I have to.

Schaefer appeals only the modification of the parenting plan. During the pendency of this appeal, C.D.S. turned 18 years old; C.J.S. is now the only child subject to the parenting plan.

## DISCUSSION

Kier did not submit briefing in response to Schaefer's appeal of the modification of their parenting plan. Schaefer filed a corrected brief after his initial opening brief was rejected on March 29, 2023. This ruling noted that Kier's response was due by September 13. A second notation ruling issued on November 3 informed Kier that her response brief was overdue and the appeal would be considered without her briefing if it was not submitted by December 1. Kier did not submit any briefing after this ruling.

Where a respondent does not file a response brief, this court "is entitled to make its decision based on the argument and record before it." Adams v. Dep't of Labor & Indus., 128 Wn.2d 224, 229, 905 P.2d 1220 (1995); RAP 11.2(a) (a party may present oral argument only if they have filed a brief). As a result, we make this decision on the briefing and record provided by the petitioner, Schaefer.

### Hearing Procedure

Schaefer first argues that the trial court erred by allowing Kier to appear at the July 22 presentment hearing and "testify" after an order of default was entered against Kier.

"The standard of review for evidentiary rulings made by the trial court is abuse of

discretion." Bengtsson v. Sunnyworld, Int'l, Inc., 14 Wn. App. 2d 91, 99, 269 P.3d 339 (2020) (citing Peralta v. State, 187 Wn.2d 888, 894, 389 P.3d 596 (2017)). We defer to the trial court's rulings unless "no reasonable person would take the view adopted by the trial court." State v. Clark, 187 Wn.2d 641, 648, 389 P.3d 462 (2017) (quoting State v. Atsbeha, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)).

Schaefer contends that despite the default order in place, the trial court allowed Kier to appear at the presentment hearing and that the trial court "essentially conducted a direct examination" despite Schaefer's objections. However, the record does not reflect that Kier was permitted to present testimony at the hearing, nor does it reflect that the trial court's decisions could not have been based on the evidence or lack of evidence presented by Schaefer.

Rather than appearing as a witness at the hearing and providing testimony under oath, the record shows that Kier appeared pro se and argued her position. The trial court noted that Kier remained in default at the time of the hearing and was not permitted to present final orders to the court as a result. The trial court asked for argument from both sides regarding procedural concerns before the final orders from Schaefer could be presented. Schaefer's attorney was permitted to argue, then Kier was permitted to respond. When Kier attempted to introduce hearsay evidence, Schaefer objected and the trial court sustained objections raised. Though it may be difficult to distinguish between when a party who is pro se is providing allowable argument versus unsworn testimony, the hearing was before a judge who was well aware of the difference between admissible and inadmissible evidence. See State v. Read, 147 Wn.2d 238, 242, 53 P.3d 26 (2002) ("in the absence of evidence to the

contrary, we presume the judge in a bench trial does not consider inadmissible evidence in rendering a verdict").

Schaefer has not demonstrated that the trial court abused its discretion in allowing Kier, appearing pro se, to present argument.

Parenting Plan

Because C.D.S. turned 18 and is no longer subject to the parenting plan, this case is moot as to C.D.S. In re Marriage of Horner, 151 Wn.2d 884, 892, 93 P.3d 124 (2004). Schaefer does not assign error to any findings of fact made by the trial court. We treat unchallenged findings as verities on appeal. Zunino v. Rajewski, 140 Wn. App. 215, 220, 165 P.3d 57 (2007).

A trial court's parenting plan is reviewed for abuse of discretion. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Custody of Halls, 126 Wn. App. 599, 606, 109 P.3d 15 (2005) (citing In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997)). A decision is manifestly unreasonable if the decision is outside the range of acceptable choices based on the facts and the applicable legal standard. Id. (citing In re Parentage of Schroeder, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001)).

However, "the trial court's discretion is cabined by several provisions in chapter 26.09 RCW." Chandola, 180 Wn.2d at 642. RCW 26.09.260 outlines the procedures and criteria required to modify a parenting plan. Halls, 126 Wn. App. at 606. A trial court abuses its discretion if it fails to follow the statutory procedures or modifies a parenting plan for reasons other than the statutory criteria. Id. (citing In re Marriage of

<u>Hoseth</u>, 115 Wn. App. 563, 569, 63 P.3d 164 (2003)).  Under RCW 26.09.260(1):

> Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party *and that the modification is in the best interest of the child and is necessary to serve the best interests of the child*.

(Emphasis added.)[7]  There exists a strong presumption against modification because changes can be highly disruptive to children.  <u>Halls</u>, 126 Wn. App. at 607 (citing <u>Schroeder</u>, 106 Wn. App. at 350).  In addition to statutory constraints, this court is "particularly reluctant to reverse a trial court's decision not to enter a default judgment in the family law context where many parties are pro se, procedural errors are common, and the welfare of children is at stake."  <u>In re Marriage of Pennamen</u>, 135 Wn. App. 790, 799, 146 P.3d 466 (2006).

Schaefer asserts that because Kier was in default, the court was obligated to enter his plan as proposed.

First, the default order provided that the court "may sign orders and hold hearings in this case without notice to the defaulted party."  It did not state that the court was obligated to approve the modifications to the existing parenting plan as proposed.  Moreover, the chief unified family court judge vacated all other orders entered in default.  At the time the trial court considered Schaefer's motion for adequate cause for modification and proposed parenting plan, Kier appeared.  Second, the issue is not whether the court is allowed to make changes to Schaefer's proposed plan.  The issue before us is whether the court properly approved changes to the existing parenting plan

---

[7] Subsections (4), (5), (6), (8), and (10) do not apply in the instant case.

13

and whether the proposed changes are in the child's best interest.

The proposed parenting plan submitted by Schaefer included significant changes from the plan entered in 2020. Without any explanation or argument as to how it would be in the child's best interest, Schaefer's proposed plan had removed limitations on Schaefer from the 2020 parenting plan that were put in place because of his history of domestic violence and abusive use of conflict. Shaefer also proposed numerous restrictions on Kier. The proposed plan also reassigned decision making power from Kier to Schaefer and required that the parties seek to resolve disputes by attending mediation rather than going to court, as the 2020 plan required. Schaefer's proposed plan also included significant changes to the custody schedule by implementing a "phased" plan that would increase Kier's time with the children based on her compliance with treatments and therapies that were not previously ordered by the trial court. Additionally, despite the ongoing contentious relationship between the parties, the proposed plan would require the parties to communicate via phone call and text, rather than through the "Our Family Wizard" app that the 2020 parenting plan required.

The trial court noted at the beginning of the presentment hearing that it was unable to sign any "final orders that are not in the best interest of the child." It further explained that the parties presenting final orders would be expected to "explain why these final orders are in the best interest of the children." The court explained that it could understand some of the proposed limitations or restrictions on Kier, such as abusive use of conflict because she failed to respond, but did not see support in the record for other proposed modifications. The court stated,

> I don't see in the record why I would order Ms. Kier to attend mental health counseling. I don't see why, and I don't have any case law that would

14

support me taking away a limitation or restriction for domestic violence, when it's already been entered in two parenting plans by two different judges in heavily contested hearings.

The trial court rejected most of Schaefer's proposed modifications to the existing 2020 parenting plan. The court did place RCW 26.09.191 limitations on Kier because

[Kier] was found in contempt twice (July 2021 and November 2021) and the children have not seen [Schaefer] for several weeks in violation of the parenting plan. [Kier] failed to adequately respond to [Schaefer's] petition for modification, which resulted in default judgement. As a result of multiple contempt proceedings and default, the Court finds [Kier] uses conflict in a way that may cause serious damage to the children and has kept the children from [Schaefer] for a long time without good reason under RCW 26.09.191(3)(e) and (f).

The court ordered Kier complete a Love & Logic online parenting class, and enroll the children in therapy with a Masters or Ph.D. level practitioner with experience in reunification therapy to work with the children on repairing the parent-child relationship within the context of a high-conflict divorce/separation. Kier was ordered to provide proof of completion and warned that if she did not follow these orders, she would not be acting in the children's best interest and Schaefer could seek judicial review through contempt proceedings or file a petition to change the parenting plan. The trial court also ordered changes to the transportation arrangements and parenting time schedule, granting Schaefer an additional night during each weekend the children were to live with him.

The trial court found that the new plan was in the best interests of the children. Schaefer argues that he "presented a vast amount of evidence showing the need for modification and the reasons it was in the best interest of the younger child." He maintains that he "argued" that Kier's contempt of the parenting plan had severely impacted his relationship with the younger child and that Kier's constant interference

15

with his residential time and abuse of the older child warranted severe restrictions against Kier. These conclusory assertions are not supported by any citation to the record.

The cases Schaefer relies on[8] do not involve a petition to modify a parenting plan and do not hold that it is improper for a court to enter a parenting plan that does not incorporate all modifications proposed when they are not in the best interest of the child.

It appears that Schaefer also asserts that the trial court improperly modified the parenting plan more than what he had originally requested. However, he fails to identify specifically what modifications he objects to that exceed what he requested in his petition. Though he cites generally to his petition and the trial court's final order and findings on the petition to change the parenting plan, that does not adequately present argument and citation to the record to merit consideration. This court will not consider an inadequately briefed argument. In re Marriage of Nilssen, No. 76164-1-I, slip op. at 6 n.4 (Wash. Ct. App. March 5, 2018) (unpublished), https://www.courts.wa.gov/opinions /pdf/761641.pdf (citing Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011)). Similarly, Schaefer contends that the trial court sua sponte amended "the order" and that the court's sua sponte changes are not supported by the record. But Schaefer does not identify what these changes are and does not cite

---

[8] Stablein v. Stablein, 59 Wn.2d 465, 466, 368 P.2d 174 (1962) ("A default judgment cannot exceed the demand of the complaint."); In re Marriage of Hughes, 128 Wn. App. 650, 652-53, 116 P.3d 1042 (2005) (holding that in a default judgment, essential due process limits the relief a court can grant to that asked for in the petition or complaint); In re Marriage of Markowski, 50 Wn. App. 633, 749 P.2d 754 (1988) (reversing a denial of a motion to vacate because trial court did not have personal jurisdiction when it entered the default order and decree of dissolution); In re Marriage of Hardt, 39 Wn. App. 493, 496, 693 P.2d 1386 (1985) (affirming granting of motion to vacate dissolution decree because it was void for providing greater relief than joint petition requested).

to the record.

Schaefer has not established that the trial court abused its discretion by allowing the pro se mother to present argument at the hearing or in how it modified the parenting plan.

Schaefer requests attorney fees on appeal. Under RCW 26.09.140, this court "may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." See also RAP 18.1. In exercising discretion under the statute, we consider the merit of the issues on appeal. In re Marriage of Raskob, 183 Wn. App. 503, 520, 334 P.3d 30 (2014) (citing In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997)). Having considered the record, we find that the trial court did not abuse its discretion and we deny the request for attorney fees on appeal.

We affirm.

Coburn, J.

WE CONCUR:

Feldman, J.

Smith, C.J.